May it please the Court, Christopher Wrench on behalf of Appellant Warren James Hartley. I'd like to reserve three minutes for rebuttal. The State Court's decision denying Mr. Roberts habeas relief were not objectively unreasonable under AEDPA for two reasons. First, Mr. Roberts received an opportunity to be heard and the statements of reasons for his parole denial, which is all that is required under the Supreme Court's sole applicable parole holding addressing the process due, and that's Greenholz. Second, even under this Court's recent precedent in the state parole context, the State Courts did not apply the State's own sum evidence test in an objectively unreasonable manner. Thus, Mr. Roberts is not entitled to AEDPA relief and the judgment below should be reversed. In Greenholz, the Supreme Court specifically addressed the federal process due in the state   received an opportunity to be heard and the statement of reasons for his parole denial. Neither Mr. Roberts nor the district court dispute that he received those two federal due process protections, and therefore the State Court's denying him relief could not be a ---- related to the Greenholz holding in order to trigger federal habeas relief. Didn't Hayward change the landscape, though? It did from a circuit precedent perspective. Hayward gave an instruction. I should back up. Initially, Hayward acknowledged that Greenholz is the only applicable Supreme Court parole holding and that it expressly rejected a federal sum evidence test. Nonetheless, the en banc court did instruct lower courts and panels to look at how the State court applied the State sum evidence test. So what are we supposed to do with AEDPA? Well, Your Honor, this Court, I understand it's an awkward position post-Hayward, but the plain language of AEDPA as well as a long line of Supreme Court precedent applying AEDPA expressly says federal habeas relief is only available for misapplications of Supreme Court law. Hayward is not a Supreme Court case, and it can't be a basis for relief. So you would have us disregard that en banc, that recent en banc decision? I think it can be disregarded, but I think it can also be squared with a long line of this Court's precedent as well, which is recognize that circuit precedent is only relevant to the extent that it identifies clearly established federal law, to the extent it identifies a Supreme Court holding. And Hayward didn't do that. The third portion of Hayward, which discussed State law, did not address a U.S. Supreme Court holding that permits federal courts to second-guess how a State court applied a State evidentiary standard. Let me ask you this. Suppose we feel like we were bound by Hayward. What remedy would be appropriate here? The remedy? Yes. Well, assuming the Court finds that the State courts misapplied the sum evidence test, the remedy, as this Court, a panel of this Court recently determined in Haggard, is a remand to the Board for a new parole consideration hearing consistent with due process. A new hearing, not a parole date. No, Your Honor. Which is what they did in Priddle. Correct. In Priddle, yes, they ordered the State or, excuse me, they ordered the Board to set a parole date. And Priddle did not have the benefit of Prather. And following Hayward's reasoning as expanded upon by subsequent panels in Pearson and Cook, looked to the State law to determine the Federal process due. And what the Haggard panel did was say if that's the circuit's precedent, we need to look at the State law for the remedy as well. And the California Supreme Court has held that as a matter of State law, only a new parole hearing is the remedy when there's a due process violation in the sense that there was a lack of sum evidence. And the Haggard remedy of a new hearing is also consistent with decisions from this Supreme Court that any Federal remedy needs to be respectful of the State's criminal justice process. It needs to take into consideration principles of comity as well as the State's overwhelming interest in managing its parole system. And the problem with ordering the Board to set a date is it ignores any subsequent evidence or information that has occurred after the, you know, in this case it's a 2006 Board decision. It ignores any of that information and would result in Mr. Roberts' release without consideration of that subsequent information. How do you see Solis and Pearson as affecting this case? You know, I would first submit both those panels' decisions took Hayward further than I would submit Hayward actually went. Well, you could make a good argument about that, but that isn't the point. We're bound by three judge panels whether we agree with their opinions or not. Now, you can make a very good argument that D-2 is not, is for not, it's for finding facts, to see if facts are right. And here are what we're going through is not finding if facts are right or not, but whether or not in fact they determined it. And so you would push that into D-1 as a legal concept. And I understand that. That makes perfectly good sense to me. But in order to get there, you have to be able to distinguish Solis and Pearson. So I think maybe you would like to hear from me of how we can follow what I'm willing to grant is a very fine argument that it should be under D-1 instead of D-2. But how do we distinguish Solis and Pearson in order to get where you want to go? Well, in terms of the D-2 question, Pearson didn't directly address a D-2. Cook v. Solis did. And I would note there's a cert petition pending in Cook at the moment. With respect to the D-2, I would point the Court, as I did in my briefs, to other decisions from this Court, in Sarasoud v. Porter, Bostic v. Calderon, where the Court recognized that sufficiency of the evidence questions are legal questions. It's a legal conclusion which falls under the parameters of D-1. Cook didn't make a statement that the board's findings are factual findings. I'm willing to agree to that. That's pretty much straight law. And you may think that Solis misused that in the decision. So you may feel that's a wrongly decided decision. Unless somebody in bank or the Supreme Court changes it, though, we have to follow it. So how would you distinguish Solis? Well, honestly, Your Honor, as a factual matter, it's not distinguishable. It's a parole situation. And here we have parole findings as well. I would note, you know, when the Court, there is conflicting circuit precedent in those cases I cited that's, you know, indicated an evidentiary question or the sufficiency of the evidence is a legal conclusion. And the parole case is indistinguishable from those cases. I mean, the California sum evidence test asks courts to decide whether there's some evidence to support a parole decision. It expressly tells courts do not reweigh the evidence, do not resolve conflicts of fact. It's a straight application of facts to law. And that's what happened at each level of the State courts here. There was no evidentiary hearings. There were no disputed facts. The State courts looked at the board's transcript, looked at Mr. Roberts' argument, looked at the record, applied those undisputed facts to the State's legal standard. And the parole context is indistinguishable from any other sufficiency of the evidence question, which is a D-1 question. And I would. Kennedy. It's a very good argument, but you already tried to take Sollis and Bank and it failed. So I guess the only avenue you have left is to the folks in Washington, D.C. Or if this Court, you know, reconsiders the issue and wants to take it on back. I would also point out the case McDaniel v. Brown. I believe it's cited in my briefs. It's a recent Supreme Court decision in the last couple of years that applied an evidentiary sufficiency question and analyzed it under D-1. And I would submit that analysis would trump anything the previous panel did in Cook v. Sollis. Before we run out of time, I want to talk a little bit about the question of remand versus parole date. Now, if I understand your argument correctly, is the reason you think remand is appropriate is because of the events that happened since the last parole hearing? That's one of the reasons, correct, Your Honor. Okay. Are there other reasons? There's also the issue of the Federal courts, just like the State courts, are not the ultimate suitability determinations. The California legislature has vested the Board, as well as the Governor, to be the final determinations of an inmate's suitability. And the record before the Court is not necessarily the entire prison file or all the information that's before the Board or the Governor. Well, but if we determine that, I mean, sort of accepting our precedent, and if we determine that the parole board decision didn't have substantial evidence supporting it, you know, the standard adopted by the State Supreme Court. So what was at that point saying is, at that point, the prison authorities presented everything they thought was necessary, and they didn't present enough. And at that point, the parole board and the Governor should have granted parole. That's what we'd be saying. Right. And so I'm not sure what would be the point of remanding. They've made a decision based on the record. We've looked at the record and said it's not enough. I'm trying to understand what would be the point of remanding. Well, it would be, in addition to the Federalism concerns, it would be, as I just said earlier, that there could be new evidence. And as a California lawyer ---- I understand. Talk about the new evidence separately. The things that happened since the last parole hearing. I understand. That's a different argument. I'm trying to understand the argument that we should send it back for a do-over when, you know, the State had every chance to present whatever it wanted to present. We think it wasn't enough, and he wasn't entitled to parole. At that point, I don't understand what the rationale would be for saying, well, go back and do it again. It would be ---- And how you stop from doing that. I mean, you can always, you know, they do it again. We, again, find it's not enough. You know, you can do that a lifetime. Well, as an initial matter, any findings the Court would make would be binding on the Board. If the Court said, you know, X, Y, and Z factors did not meet the sum evidence test or was an unreasonable application of the sum evidence test, the Board is not ---- So wouldn't we have to have some indication that there was something in the record that, you know, that they had more evidence or, you know, something to suggest that there's something more there that they didn't consider before we would have a reason to send back? No, Your Honor, because that's the Board's job. I mean, we go back to the Board, and the presumption is the Board's going to follow the law. But we're assuming that they didn't do their job right. I understand that's a hard concept for you to get your head around. But just go with it for the time being. Certainly. I mean, if we assume the Board, you know, messed up the first time around, they would have a court order, you know, telling them what's ---- you know, or I shouldn't say what's insufficient. Well, I mean, they messed up in the sense that they didn't use the right standard. They didn't use the current dangerousness standard. Well, and that raises ---- So that's why they should be given another chance to see whether the evidence measures up to the correct standard. Correct, Your Honor. That's a very important point. I mean, the Board in 2006 was operating under two governing California Supreme Court decisions, Rosencrantz and Dannenberg. It wasn't governing under Lawrence, which via Hayward, Cook, Pearson, Pertl, you know, is now the standard. And they didn't have an opportunity to have that standard, nor did the state courts. All three state court decisions reviewing the Board's decision came before the California Supreme Court changed the landscape with the Lawrence decision. So that would be ---- Fair enough. So change in the law would be a rationale which would be applicable to this particular case because there's been intervening change in the law. Now, let's talk a little bit about the rationale about events that happened since then. There's necessarily a lag between the time that we get a case and the time the Parole Board acts, and things always happen in the meantime. How do you prevent the sort of continuous rambois problem that it gets to us, we say, oh, well, you know, more time has passed, we need to send it back? So what would be the shape of this remand to avoid that problem? Would it be something like a, you know, a 60-day remand with return to district court, or how would the process work? It could be in order to hold a new hearing and, you know, consistent with due process. And it would be consistent with the court's order. I mean, whatever the court found in terms of the record and the insufficiency of the evidence would be binding on the board. And I've never seen a case or read a case where the board's disregarded a court order. No, no. I'm assuming they would do what we would. I'm not suggesting anything else. But then what happens, as I understand, the Parole Board holds a hearing, it then goes to the governor, right? Correct. So if we send it back to the ---- I'm just sort of trying to think of the process. So let's say we send it to the ---- we direct the district court to do this, but we, the federal courts, say go back to the Parole Board for a limited time. We could do that, right? Say 60 days or ---- Correct. Yes. Some time like that. And then let's say the Parole Board then comes up with a decision one way or the other. I think the Parole Board says, no, it doesn't go to the governor, right? It would depend on this Court's order. You know, the district court precluded gubernatorial review, but under the reasoning in Haggard that this Court found, as well as Prather, it's improper for a court to siphon off the governor's review. Just because the board's decision, you know, is improper doesn't mean there isn't proper evidentiary support. The board just might have missed it. And the governor, you know, has a right to conduct an independent de novo review. So we'd have to allow time for the governor's review, as well? Yes. Okay. Just trying to understand the mechanics here. Okay. That's it. We're out of time. We'll hear from the other side. Thank you. Good morning. May it please the Court. My name is David Porter. I'm an assistant federal defender from the Eastern District of California, and I represent the appellee, Kenneth Roberts. A wise jurist once said that AEDPA deference is not a blindfold ñ is neither a blindfold nor a bandana. And in this case, truly, someone would have to be blind to the facts of the case to pay AEDPA deference to the superior ñ the Los Angeles Superior Court's decision in this case, which is so riddled with factual errors. And, Judge Wallace, I disagree with you that this is not a D-2 case. This is a D-2 case because there is an unreasonable determination of the facts. There is ñ this is not up on an undisputed record of facts, as the deputy attorney general has said. What's it up on? Is it under D-1 or D-2? Well, I think that it meets the standards under both D-1 and D-2. What is it up under the facts that we have before us? The district court noted both the factual ñ the unreasonable factual determinations and the unreasonable application of the supreme court. Under D-1, the supreme court has indicated this is a procedural test, and so long as the person knows the evidence against them can provide information, has notice, et cetera, that that's sufficient. That's all D-1 gives in habeas corpus context. You want to go further than that, don't you? The supreme court in Hill v. Superintendent said that in a variety of contexts that the sum evidence standard is necessary to prevent arbitrary deprivations of due process interests. And that ñ that is what we have here. Do you agree that looking for some evidence, whether some evidence is legal, something we do as a legal point or as a factual point? That is a legal matter. That's what I thought, too. So what are we doing in D-2? I thought this was D-1 case. It didn't come out that way. Well, let me explain. The superior court in this case said that the board of parole hearings found that Mr. Roberts was unsuitable because the crime was dispassionate and calculated. That's wrong. The board of parole hearings in fact found that it was not calculated. It just relied on the dispassionate portion of the regulation. The superior court said that the board of parole hearings found that the motive for this crime was trivial. That is wrong, another misreading of the record. The board of parole hearings said that it was inexplicable. Those are different standards under different regulations. The superior court did a terrible job. I mean, it might have used the wrong template. It might have used a template from an earlier denial of a habeas petition with some other facts and some other person. But it did a terrible job. This is the last case that this Court would want to say, oh, yes, we pay deference to the State court decisions because they do such a good job of analyzing what the facts were. I would urge this Court to read the findings and recommendations of the magistrate judge. They're very thorough. And they go through each one of the elements that the superior court said, relied on, and said, well, this is not in the record. That's not correct. If we agree with you, what would you have us do? What do you get out of this? Do you get a new hearing or do you get an automatic release or what? I am urging the Court to affirm the district court's order, which said the board has 30 days to hold a new hearing, and if there is no new evidence regarding his prison conduct or mental status, that a date be calculated. So the deputy attorney general in this case is not focusing on the facts of this case. This, he said before, that this would the remand order in this case would not allow new information to be considered by the Board of Parole Hearings. That is wrong. On page 6 of it. Sotomayor, hasn't the district court, it's not the district court's fault, but since  the district court did not have a new hearing, that the district court would have to deal with the district court in this context only to have a new hearing, not to say if you don't find something, you have to let him out of prison. How do you distinguish Haggard? Judge Wallace, first of all, this Court should follow the Pirtle decisions. You've pointed out that the Pirtle decision is directly on point. That was a case that was decided by a panel of this Court after full briefing and oral argument. Haggard, on the other hand, is a motions panel decision that was not after full briefing and did not have the benefit of oral argument, and it's only a provisional decision. What do you mean there wasn't full briefing? It was decided by a motions panel with whatever briefing there was a briefing. Without, with just motions briefing, yes. It's not the full briefing that we usually have, that this Court has, or that the Court in Pirtle had. It is a provisional decision. All it said was under Hilton v. Bronskill, there's a likelihood of success on the merits by one of the parties, by the warden in this case. It's a provisional decision that could be, that's not even binding on the merits panel that finally decides the case. Why should it be binding on this Court? Well, it's a published precedent. It's a published precedent, but it's a provisional decision. And first of all, I mean, I would urge the Court to look at Haggard. Haggard, first of all, misreads Hayward. It says, oh, well, we have to give deference to the California Supreme Court decisions in Lawrence and Chaputis. That's correct. But why is it correct? It's correct because a State court decision interpreting the State courts, the State statutes is binding on Federal courts. Well, the Prather decision of the Supreme Court of California is not based on a reading of the California statutes. It's based on the State constitutional provision of separation of powers. That is not binding on Federal courts. Federal courts are bound by Federal statutes. There is a Federal statute directly on point 2243 of Title 28 that says that habeas corpus shall be issued in the interest of justice. And the Fay v. Noya case that we've cited in our brief specifically of the United States Supreme Court says habeas lies to enforce the right of personal liberty. When that right is denied and a person confined, the Federal court has the power to release him. Let me ask you a question. Suppose you were writing this decision and you wanted to say that Haggard, we're not bound by it. Another three-judge panel, even though motion, has written and published, which ordinarily would bind us. We would have to write something. What would we write if we took your position and what case would we rely on? I think you rely – first of all, you would say Haggard, we respectfully disagree with Haggard's reading of Hayward, as I've just explained. It doesn't require complete deference to all California Supreme Court decisions. Second of all, Haggard relies on a mistaken premise that the court in Pertle did not have the benefit of Prather. It did. After Prather – after Pertle was decided, the warden filed a petition for rehearing and rehearing in bank. Then Prather was decided. And this very same deputy attorney general submitted a 28-J letter to this court pointing out, well, Prather's been decided. You need to follow Prather. That was on August 2nd. It wasn't until August 20th that this court denied the petition for rehearing in the Pertle case. So Pertle – the Pertle panel and the en banc court, no judge of this court even requested an en banc vote in Pertle. This court did have the benefit of the Prather decision before Prather – before Pertle became final. We're getting around to writing, though. We say we don't need to follow Haggard, which ordinarily we follow, a three-judge panel case. Then there's a because. And we have to say something that the whole earth won't come down upon us, all 28. Because Pertle – we have to follow all of the precedent of the Ninth Circuit. So we have to follow Pertle, too. And Pertle is directly on point. And the reason why Haggard says that Pertle is not on point is mistaken. Haggard says – Well, what you're saying is – what you're saying is Haggard is wrong. It – it – Well, Haggard's based on a fundamental – It's misstating Pertle. Misunderstanding. But I – I find mistakes all the time. Well, not all the time. Our circuit's almost perfect. But there are times I disagree with interpretation. Yes. But that isn't a reason I can just leave it aside. You have to have a case, you know, that says – or you have to go and bank with it, with Haggard. Or you have to have a fact that's undeniable. Hmm. It is an undeniable fact that – Can we do that in Supreme Court opinions, too? Sorry? Can we do that in Supreme Court opinions, too? Because there are quite a few that I think – Yeah, I – I would suggest that, yes, if you have an undeniable fact that the sun comes up every day at some time, then that's – I'll keep that in mind. Okay. Also, Judge Wallace, I would say that one other thing is that Haggard is factually distinguishable from this case. In Haggard, the district court had an unconditional release order. They said, board of parole hearings within 30 days, you give him a date and you release him. That is different than the order in this case. In this case, the district court said within 30 days you have a new hearing, and if there is no new evidence of his prison conduct or his mental status, then give him a date. Even though Haggard says you don't have power to do that, you can only ask for re-hearings by the parole board. Well, that's dicta. Haggard – Okay. Haggard is a different factual situation. It says several times that the district court's release order was an unconditional release order. This is most definitely not an unconditional release order. It says release him if there is no new evidence that his prison conduct or mental status means that he is currently a danger to society. And this goes directly to the point that Judge Kaczynski was talking about, that this type of order in Haggard would put the prisoner at a merciless merry-go-round, an endless merry-go-round, where this case took four years now. It took four years since the board of parole hearing in 2006 that we're challenging. It took four years to get to this point. Just to put him at the very beginning again in the board of parole hearings is, I suggest, cruel. And I'm sorry, Judge Kaczynski, I interrupted you. You were going to ask? Well, you may have sort of answered what I was going to ask. I was going to say, assume Haggard is binding, how do you get around it, or how do you – and I think as you talked, you said the part was dicta. That was your answer. Okay. To what would have been my question. So you – So we have a – in other words, in Haggard, we have an unconditional order from the district court. That's what Haggard was saying. Do talk to me, though, about the governor's review here. Am I correct in understanding the state scheme? I know it goes to the governor if the parole board recommends or – Grants. Forget about that. It's a grant. It's an actual grant. Right. It goes to the governor for a review. Yes. It doesn't go to the governor if the parole board denies it. It does. Yes. Technically, it does. All denials, all decisions go to the governor. Go to the governor. But the governor has never once reversed a denial. New governor, you know. We hold a lot of hopes for him. But what do we do about the governor's authority to review? So we're sending it back into this – according to what your view. We send it back into the state process. But we can very well set it back – send it back into a state process and truncate what state law itself provides as the full review process within the administrative structure, can't we? Yes, we can, and yes, you have. And hurdle, you said. Wouldn't this be sort of like remanding it to an I.J., an immigration judge, and saying, and don't bother going to the BIA? I know this may not be anything. Well, we probably know a little bit about immigration cases. A little bit. But when you have an administrative decision that the responsibility of the administrative body is to go through the full record and issue a decision based on the full record, and this Court affirms a decision in the district court that says that record is insufficient. It does not contain even this minimal level of some evidence to support the decision. Why should they get a second opinion? But we're sending it back for the parole board to make a decision as to whether there is new evidence. And the parole board looks and says no new evidence. Why isn't the governor entitled to second-guess that decision? Because the governor's decision is based on the same record as the board. You can't, there's a period of four months while the board's decision is not final, and then there's a period of 30 days that that goes to the governor and that decision is reviewed. But none of that time is available for the parties to submit new evidence. So it is the same record as the board. The governor has to review the same record as the board. So as this Court said in McQuillan, it would be a futile act. And as it said again in Perl, it would be a futile act to remand this so that it could go before the governor. When we've already decided that there's not even some evidence in the record to support a finding that this person is guilty of a crime, we have to go back to the board and say, well, there's no evidence. There's not some evidence as it stands now. But if there's going to be an additional hearing, see what happens. As Judge Kaczynski noted, there's not even a hint in this case that. Well, we don't know. I mean, we haven't had the hearing yet. If you're right, it goes back. There's another hearing. The State's given an opportunity to present new information. Right? Do I have that right? Yes. And then let's suppose it finds new information sufficient to deny him. Does it go to the governor then? It does. It would go to the governor. But, Judge Silverman, there have been three subsequent hearings for Mr. Roberts in 2007, 2008, and 2009. He has been denied exactly for the same reasons as in 2006, the circumstances of the crime. Nothing has changed. And by sending him back for another hearing, it would just put him on this merry-go-round. Mr. ---- Well, he gets a new hearing even under your construct. That's true, but it's a very narrow ---- That's what I'm saying. That's what I'm talking about. Very narrow hearing for a very narrow purpose. He is 69 years old right now. He has been virtually disciplinary free for 24 years in prison, serving a 17-to-life sentence. He has consistently favorable programming, exceptional programming for both himself and others. He has confirmed parole plans that the Board has constantly said, you've done exactly what we've told you to do. You're doing wonderfully. And what do they say at the end? They say, keep on doing what you're doing. The district ---- he deserves to get off the merry-go-round. This Court should affirm the district court's decision. Thank you. You're out of time. If you'd like to take a minute for rebuttal, you may. If not, go ahead. I have just three questions. We didn't really talk about it because most of it was on the remedy, but before we even get to the remedy, there needs to be a finding that the State courts objectively and reasonably applied their own sum evidence test. The sum evidence test itself is exceedingly deferential when that's coupled with EDPA. We have a dual deference applicable here. And the Board made several findings from Mr. Roberts' minimization of his crime, insisting it was an accident, despite the fact that he pled guilty, despite the fact that he dug a grave for the victim, obtained the gun just six days before the shooting and engaged in an extensive cover-up. Also, they didn't believe his story that he only turned ---- that he turned himself in on his own accord. The Board specifically noted that a warrant had already issued for his arrest, the Mr. Roberts' brother had already told of Mr. Roberts' confession to the police. It was only then, in a year and a half after the crime, that Mr. Roberts turned himself in. These circumstances are highly relevant under Lawrence, under Chaputis, under Rosenkranz and Dannenberg, which were the governing law. Thank you. Okay. Thank you. The case is argued. We'll stand for a minute.
judges: Kozinski, Wallace, Silverman